UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN  RE:   BONITA  B.  PHILLPS  AND
JEFFREY S. PHILLPS,

                    Debtors.

_____

EPIC AVIATION, LLC,

                    Appellant,

vs.                                         Case No.  2:12-mc-38-FtM-29

BONITA  B.  PHILLIPS  and  JEFFREY  S.
PHILLIPS,

                    Appellees.

_____


**OPINION AND ORDER**

     This matter comes before the Court on appellant's Emergency

Motion to Set Aside Sale and Motion for a Stay Pending Appeal

(Misc. Doc. #1)[1] filed on October 26, 2012.  The Court directed the

filing of expedited responses.  (Misc. Doc. #2.)  Appellees filed

a Response in Opposition (Misc. Doc. #4) and the Chapter 7 Trustee

filed a Response in Opposition (Misc. Doc. #5).  The Bankruptcy

---

[1]The  Court  will  make  reference  to  the  docket  in  this
miscellaneous  case,  the  related  appeal,  and  the  underlying
bankruptcy case throughout this Opinion and Order.  The Court will
refer to the documents in the miscellaneous case as "Misc. Doc.",
the documents in the appellate case, Case No. 2:12-cv-585-FTM-29,
as "Doc." and the documents in the bankruptcy case as "Bankr.
Doc.".  The relevant documents in the underlying bankruptcy case
were transmitted in 2:12-cv-585-FTM-29 or otherwise available on
PACER.

Court denied a stay pending appeal in the first instance.  (Bankr. Doc. #236.)

Appellant Epic Aviation, LLC (appellant or Epic) seeks to stay the Order on Debtors' Emergency Motion for Enlargement of Time to Make Settlement Payment to the Trustee and for Order Authorizing Sale of the Debtors' Homestead Property (Doc. #1-2), and to set aside the sale and the Trustee's Satisfaction and Release of Lien executed the same day.[2]

### I.

Under Federal Rule of Bankruptcy Procedure 8005, a motion for stay pending appeal must "ordinarily be presented to the bankruptcy judge in the first instance."  Fed. R. Bankr. P. 8005.  To obtain a stay pending appeal from a bankruptcy court pursuant to Rule 8005, the following standard must be satisfied: "[T]he movant must clearly establish: (i) that the movant is likely to prevail on the merits of its appeal, (ii) that the movant will suffer irreparable injury if a stay or other injunctive relief is not granted, (iii) that other parties will suffer no substantial harm if a stay or other injunctive relief is granted, and (iv) in circumstances where the public interest is implicated, that the issuance of a stay or other injunctive relief will serve, rather than disserve, such public interest."  Tooke v. Sunshine Trust Mortgage Trust, 149 B.R.

---

[2]The Notice of Appeal references only the Order granting the emergency enlargement of time.

687, 689 (M. D. Fla. 1992)(quoting In re Charter Co., 72 B.R. 70, 71-72 (M.D. Fla. 1987)).  The decision whether to grant a stay pending appeal is left to the sound discretion of the bankruptcy court, and a district court sitting in an appellate capacity reviews the decision for an abuse of discretion.  In re Colony Square Co., 788 F.2d 739, 741 (11th Cir. 1986); In re Lang, 414 F.3d 1191, 1201-02 (10th Cir. 2005).

Rule 8005 also gives a district court the authority to issue a stay pending appeal of a bankruptcy court order.  When such a stay is requested, the district court examines the matter de novo, considering the same four factors utilized by a bankruptcy court. In re Lang, 414 F.3d at 1202 n.31.  Issuance of a stay by the district court is a matter within its sound discretion.

## II.

**The Settlement Agreement:**

On October 9, 2007, after a hearing, the Bankruptcy Court issued an Order Approving Joint Motion for Authority to Compromise Controversies Between Diane Jensen, The Chapter 7 Trustee and Bonita and Jeffrey Phillips (Doc. #1-22).  The Order provided that the Trustee would be paid $1 million from the sale of debtors' homestead in Naples, Florida, if an adversary proceeding[3] was dismissed with prejudice.  Alternatively, the Trustee was to be

---

[3]The adversary proceeding in question was a lawsuit filed by Epic.  (Doc. #1-25, pp. 7-8.)

-3-

paid $825,000.00 from the sale of the property if the adversary proceeding was not dismissed. (Id., ¶ 3.) The Trustee was expressly granted a lien on the homestead, subordinate only to two mortgages and any real estate taxes due. (Id., ¶ 4.) The Trustee was authorized to reissue the Bill of Sale for the sale of Jet 1 Charter, Inc., stock to Bonita and Jeffery Phillips as tenants by the entireties, effective December 29, 2006[4], and the debtors were authorized to place the property on the market. (Id., ¶ 5.) No deadlines were attached to the consummation of the settlement and compromise, except that the "[i]ntentional failure of the Debtors to pay the Trustee the amounts. . . shall constitute a breach of the compromise and shall be grounds for the revocation of the Debtors' discharge." (Id., ¶ 7.)

At the hearing, the Trustee indicated that no time limit was added because the market was bad; debtors, however, had to make the mortgage payments or a default would allow the Trustee to seek the sale of the property. (Doc. #1-25, p. 5.) The asking price, at the time, was $6 million, but debtors did not expect to receive that amount. (Id., pp. 5-6.) The Trustee filed a Motion to Compel (Doc. #1-26) seeking to compel debtors to further reduce the asking

---

[4]The Trustee sold the stock in Jet 1 Charter, Inc. to debtors, as husband and wife, at a public sale. (Doc. #1-24.)

price of the home, which motion was denied without prejudice (Doc. #28) on November 17, 2010.[5]

**The Compromise:**

On July 31, 2012, the Trustee filed a Motion to Approve Compromise of Controversy Between Trustee and Jeffrey S. Phillips (Doc. #1-29), proposing to compromise the 2007 Settlement Agreement for $500,000 in exchange for a release of the lien on the property, as being in the best interest of the estate because the house had remained on the market for five years. Epic opposed the request. (Doc. #1-30.) At a hearing on September 18, 2012, the Trustee requested a continuance of its motion to compromise in order to hold an auction, and the Trustee sought to issue a notice with a shortened time period to object to the auction. (Doc. #5, pp. 5-6.) It was noted that no further notice to creditors or an order of the court would be necessary if the debtors obtained a buyer for the property because they were already on notice of the lower $500,000 compromise amount. (Id., pp. 6-7.) The oral motion to shorten the notice period was granted, and the Trustee was authorized to serve the Notice with a shortened deadline to submit written objections, to submit a bid, and to conduct the auction. (Doc. #1-33.)

---

[5]The Bankruptcy Court conducted a hearing on the motion. (Doc. #1-31.)

On September 18, 2012, the same day of the hearing, the Trustee filed a Report and Notice of Intention to Sell Property of the Estate at Public Sale (Doc. #1-32) stating an intent to hold a public sale of the Trustee's rights and interests in and to the Mediated Settlement Agreement to the highest bidder.  The minimum bid was $525,000.00 (the amount orally submitted by Epic), with all bids to be received by the Trustee by 5 p.m. on September 27, 2012, and the telephonic auction to be conducted on September 28, 2012 at 2 p.m., if at least two qualifying written bids were received.  The balance of the high bid was due within 48 hours of the conclusion of the auction.  The auction was not advertised, only noticed to all creditors.

**The Auction:**

The telephonic auction, conducted on September 28, 2012, was transcribed.  (Doc. #2.)  The Trustee indicated that the auction was set because Epic placed a bid of $525,000, and both Epic and the debtors had put up the required $525,000 deposit.  The bidding commenced from this starting point, and eventually reached $825,000, which put the debtors "in an interesting posture."  (Doc. #2, p. 7.)  The debtors declined to bid over the payoff amount and questioned the good faith of Epic.  (Id., pp. 8-9.)  The debtors advised the Trustee that they would pay the full $825,000 under the Settlement Agreement.  (Doc. #1-34, ¶ 4.)  After some discussion off the record, the Trustee suggested that if Mr. Phillips was

willing to pay the $825,000 within 48 hours, the Trustee would not sell her rights and there would be a payoff.  Epic objected and suggested that the matter be taken to the Court as Epic was the highest bidder. (Doc. #2, p. 10.)  The Trustee suggested that the matter was moot because Mr. Phillips was willing to match the amount, and that he had the right to pay the agreed amount under the Settlement Agreement.  (Id., pp. 10-11.)  Mr. Phillips was given until the set time to put the money into the trust account, where it would remain pending a hearing to address Epic's objection.  (Id., p. 14.)

**Debtors' Emergency Motion:**

On October 2, 2012, on the date of the deadline to provide the $825,000, the debtors filed an Emergency Motion for Enlargement of Time to Make Settlement Payment to the Trustee and for Order Authorizing the Sale of the Debtors' Homestead Property (Doc. #1-34).  In the Emergency Motion, the debtors argued that the 48 hour payment deadline should not apply under the circumstances of the agreement.  The debtors stated that they received a verbal offer to purchase the property for $4.175 million, sufficient to pay all mortgages and the $825,000.00 to the Trustee, however "issues have arisen relating to Epic's conduct during the auction and Epic's judgment against Debtor, Jeffrey S. Phillips only."  (Id., ¶ 6.) The debtors stated that the 10% deposit had been wired and that they were prepared to immediately wire an additional $500,000

-7-

pending the closing of the sale, but that they did not believe that they should have to pay the full $825,000 "due to the unknown agenda of Epic." (Id., ¶ 8.)  The debtors indicated that the motion to compromise "has essentially [been] withdrawn" by the Trustee, they were prepared to pay the full payoff amount in the original Settlement Agreement, and the auction was no longer necessary. (Id., ¶ 9.)  Therefore, additional time was requested to make full payment and sell the property free and clear of any lien of Epic.

**Order Appealed:**

The Bankruptcy Court conducted a hearing on October 9, 2012, with regard to debtors' emergency motion. (Doc. #3.)  Counsel for debtors summarized the events at the auction and stated that because of Epic's objection to the way the auction was concluded, the Trustee was not in a position to sign a release for the $825,000 payoff amount. (Id., pp. 4-11.)  Counsel stated that he had the balance of the funds in his trust account ready to be paid to the Trustee, pending resolution of the Epic objection. (Id., pp. 12-13, 14.)  Counsel for Epic argued that the terms of the sale at the auction were never conditioned upon the sale of any property and the Notice clearly required all monies to be paid within 48 hours. (Id., pp. 19-20.)  Epic stated that $825,000 was sent to the Trustee, and that they are willing and able to close as the highest bidder at the auction. (Id., p. 20.)  Epic argued that the

auction was noticed, where the highest bidder normally wins, yet
the Trustee agreed or decided to construe the debtors' equal bid as
seeking to meet their original obligations under the Settlement
Agreement as if a tie bid was sufficient to overcome their highest
bid. (Id., p. 21.)  The Trustee's position was that if the debtors
could fund the $825,000 within 48 hours of a ruling, she would
accept that as the highest and best offer at the auction.  If the
debtors are unable to fund the $825,000, the Trustee would sell her
rights to Epic as the second highest and best bid.  The Trustee's
position was that she had the judgment and discretion to decide the
winner.  (Id., pp. 23-24.)  The Bankruptcy Court found that the
motion was timely filed, the Trustee was in the best position to
determine the highest and best bid at the auction, that if Epic was
determined to be the winning bid and the $825,000 was tendered by
the debtors, Epic would be obligated to accept the payment.  (Id.,
pp. 29, 30.)  The Court noted, in response to Epic's continuing
objections, that the Settlement Agreement did not have a deadline
for payment, and did not provide for interest, and did not provide
for anything other than the debtors would list the property for
sale.  (Id., pp. 33-34.)

On the same day, after the hearing, the Bankruptcy Court
issued the Order granting an emergency motion for enlargement of
time to make settlement payment and for an Order authorizing the
sale of the debtors' homestead property.  The motion was granted

"only to the extent that the Debtors seek additional time to fund the purchase price at the auction sale by paying $825,000 in full satisfaction of the Settlement."  (Doc. #1-2, p. 2.)  The Court imposed the following conditions:

> 2.   The Debtors are directed to wire transfer $772,500 (the difference between the $825,000 bid and the $52,500 deposit) to the Trustee on or before 5:00 P.M., October 11, 2012. If the Debtors timely make this payment, (i) the Debtors will be deemed to be the successful bidder at the auction sale; (ii) the Settlement will be deemed paid in full, (iii) the Trustee will provide the Debtors a release and satisfaction of the lien created by recordation of the Settlement Order, and (iv) the Trustee will return all monies paid by Epic Aviation, LLC, in connection with the auction.

> 3.   If the Debtors fail to pay the $772,500 as provided in paragraph 2 of the Order, then (i) Epic Aviation, LLC, will be deemed the successful bidder at the auction/sale; (ii) the Trustee will assign all of her rights under the Settlement to Epic Aviation, LLC, and (iii) the Trustee will return the deposit paid by the Debtors in connection with in the auction.

(Doc. #1-2, pp. 2-3.)  Epic filed a Notice of Appeal (Doc. #1-1) from this Order.

**Stay Pending Appeal:**

On October 10, 2012, the debtors filed an Emergency Motion to Avoid Judicial Lien of Epic Aviation, LLC (Doc. #1-36) seeking to avoid Epic's judgment lien against Mr. Phillips in the amount of $322,603.30.  The debtors argued that the compromise with the Trustee had been satisfied and the Trustee's lien released, and Epic's lien could create a title issue even though it could not attach to the property.  On the same day, Epic filed their Notice

of Appeal and an Emergency Motion for Stay Pending Appeal (Doc. #1-37).

The Bankruptcy Court held a hearing on October 12, 2012, on both motions.  At the hearing, Epic argued that it was not just additional time that was granted, but the Court was actually awarding the debtors the highest bid in the case when they did not make the highest bid.  The Bankruptcy Court noted that the Trustee made the determination.  (Misc. Doc. #5-1, p. 39.)  The Bankruptcy Court found that the Trustee essentially called off the auction once the debtors agreed to match the full $825,000 to allow them the opportunity to pay the amount under the Settlement Agreement. The Bankruptcy Court further found that it was the Trustee who determined that the debtors' offer was the highest and best offer, in her "business judgment."  (Id., pp. 46-47, 48.)  The Bankruptcy Court noted that the debtors paid the balance and the Trustee executed a satisfaction and release of lien, which was recorded on October 10, 2012, and that the appeal appeared to be moot.  (Id., p. 49.)  The Bankruptcy Court found that it had the discretion to grant the extension of time, the decision was not clearly erroneous, and the relevant factors did not weigh in favor of granting a stay pending appeal.  (Id., p. 53.)  The stay was denied on October 23, 2012.  (Bankr. Doc. #236.)

### III.

### (1)   Likelihood of Prevailing

The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error.   In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).   Epic argues that the debtors and the Trustee violated Federal Rule of Bankruptcy Procedure 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).   The Court finds that the Rule does not apply.   In this case, the Court did not issue an order authorizing the sale or auction.    The Trustee noticed the auction after receiving permission to shorten the notice period before the telephonic auction with debtors and Epic being the only bidders. Additionally, the Trustee allowed the debtors to comply with the original Settlement Agreement rather than continuing with the auction, not the Court.

The Order at issue here is the granting of an extension of time to debtors to submit their payment.   Epic is correct that "[t]he motion before the court was a motion to extend the time period for the Debtors to make payment under the settlement agreement -- not to declare them the winners at the Auction." (Misc. Doc. #1, pp. 11-12.)   The Trustee's termination of the

auction is not the subject of the appeal.  Although the Bankruptcy
Court stated that the debtors' timely payment would make the
debtors the successful bidder at the auction sale and in compliance
with the Settlement Agreement, the Court finds that the Order
granting additional time to debtors to provide payment does not
encompass an appeal of the auction process or the actions of the
Trustee, or the practices of the debtors by delaying payment over
five years under a settlement agreement with no deadline.  The
Bankruptcy Court was within its discretion to grant a brief
extension of time for the debtors to essentially comply with a
Settlement Agreement with no deadline.  The motion was timely made,
a hearing was conducted, and the Order was not clearly erroneous.
Therefore, the Court finds that Epic has not demonstrated it will
prevail on the merits.

### (2)  Irreparable Harm

The Court finds that Epic would not suffer irreparable harm.
The Trustee and the debtors had no deadline to ensure compliance
with the Settlement Agreement, and the Bankruptcy Court indicated
that if Epic were to be declared the highest bidder, it would be
compelled to accept payment from the debtors.  (Misc. Doc. #5-1, p.
54.)   Therefore, the debtors would be paying the $825,000.00
regardless, and Epic would pay $825,000 to receive $825,000,
regardless of their valuation of the Settlement Agreement as being
worth more than the $825,000.  (Misc. Doc. #5-1, p. 11.)

### (3) Harm to Other Parties

The Court finds that granting a stay would harm the debtors or the Trustee as they have concluded their transaction.  There is nothing to prevent the sale of the homestead property, even if a stay were to be granted, as the only issue on appeal is whether an extension of time was appropriate.

### (4) Public Interest

Although public policy may favor bankruptcy auctions, this was an informal telephonic auction conducted by the Trustee.  Public policy also favors enforcement of settlement agreements and providing relief to the creditors who have been waiting for years to receive relief.  In re Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).  Epic made it clear that if they won the auction they would not allow the debtors to make the payment but would instead protract litigation and attempt to reopen matters to the detriment of creditors with a far greater interest in seeing this matter concluded.  The Court finds that public policy does not favor such a position.

Accordingly, it is now

**ORDERED**:

Appellant's Emergency Motion to Set Aside Sale and Motion for a Stay Pending Appeal (Misc. Doc. #1) is **DENIED**.  The Clerk shall transmit a copy of this Opinion and Order to the Clerk of the

Bankruptcy Court, terminate any deadlines and motions (Misc. Doc. #6) as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of November, 2012.

JOHN E. STEELE
United States District Judge

Copies:
Bankr. Ct.
Counsel of record

-15-